■ JUDY A. D. JOHNSTON, Respondent, v RICHARD H. COLVIN et al., Appellants.—Weiss, J. Appeal from a judgment of the Supreme Court (Doran, J.), entered January 6, 1988 in Albany County, upon a verdict rendered in favor of plaintiff.

This is a negligence action to recover for personal injuries sustained in a work-related accident in June 1985, when plaintiff's automobile collided with a truck driven by defendant Richard Colvin and owned by defendant M.K.S. Industries, Inc., Colvin's employer. At trial, plaintiff testified that the back injuries she sustained prevented her from returning to work as a laborer and foreperson trainee until April 1986. She then worked at light duty until June 1986, when Dr. Ward Oliver instructed her not to return to her employment. Plaintiff, who has only a 10th grade education, has not worked in her former capacity since that time. Dr. Jeffrey Lozman, plaintiff's orthopedist, testified that she was permanently and totally disabled from performing construction work due to her back condition. He diagnosed a degenerative lumbar disc with a guarded prognosis and further prescribed a continuing course of chiropractic treatment and bracing for plaintiff's back. The record demonstrates that plaintiff received numerous medical treatments, including a 17-day stay at a rehabilitation hospital, and accumulated medical bills amounting to $10,738.53. Since the accident occurred during the course of her employment, the employer's workers' compensation insurance carrier paid plaintiff's medical bills and provided for lost wages. The jury returned a verdict in plaintiff's favor in the amount of $467,000, later offset by the amounts paid by the compensation carrier.

On this appeal, defendants initially contend that Supreme Court erred in directing the jury to assess medical costs since this item represents "basic economic loss" which plaintiff was not entitled to recover (see, Insurance Law § 5102 [a], [b]; § 5104 [a]). The argument must be addressed in context. A review of the record indicates that the parties were uncertain as to whether the compensation carrier intended to exercise a lien against any recovery that plaintiff might achieve.[1] To

1. Pursuant to Workers' Compensation Law § 29 (1-a) (as added by L 1978, ch 572, § 2, eff July 1, 1978), it is clear that the compensation carrier did not have a viable lien for compensation payments made in lieu of first-party benefits. To this extent, the compensation carrier's sole recourse was

adjust for this possibility, the court explained in a precharge conference that the question of medical expenses would be given to the jury, with the proviso that the verdict would be appropriately offset in the event the lien failed.

Under the No-Fault Insurance Law, a plaintiff cannot recover against another covered person for basic economic loss (Insurance Law § 5104 [a]; *see, McDonnell v Best Bus Co.,* 97 AD2d 433; 1 NY PJI2d 385 [1988 Supp]). Here, the evidence was essentially uncontested that plaintiff's medical expenses totaled roughly $10,700, as ultimately calculated by the jury. Consequently, as defendants suggest, it was readily apparent prior to the jury charge that plaintiff's medical expenses and lost earnings covered by no fault (a maximum of $36,000) did not exceed the $50,000 basic economic loss threshold *(see, Owens v State of New York,* 96 AD2d 630, 631; *Barnhart v Branch Motor Lines,* 107 Misc 2d 47, 52; 1 NY PJI2d 385 [1988 Supp]). In this sense, the ensuing charge on medical expenses was unwarranted. Nonetheless, we do not find the error so egregious as to warrant a retrial since Supreme Court properly offset the $10,700 from the final judgment by operation of Insurance Law § 5104 (a) *(see,* 1 NY PJI2d 383 [1988 Supp]; *cf., McDonnell v Best Bus Co.,* 97 AD2d 433, *supra).*

Defendants further maintain that Supreme Court unduly confused the jury and inflated the damage award by charging that plaintiff would have to refund any workers' compensation benefits received.[2] To illustrate the resulting confusion, defendants emphasize that the jury's only inquiry during deliberations concerned how much workers' compensation was paid. While we agree that this instruction was technically incorrect, we reiterate that at this juncture there was an unresolved question as to whether the workers' compensation carrier held a lien against any resulting judgment. As indicated, this dilemma was unnecessary, for the compensation carrier could not claim a lien for payments made in lieu of first-party benefits (Workers' Compensation Law § 29 [1-a]; Insurance Law § 5105). We find, however, that any discernible prejudice was diminished by Supreme Court's responsive instruction to

to pursue a claim against defendants' insurer pursuant to the intercompany settlement procedures of Insurance Law § 5105 *(see, Matter of Purex Indus. v Nationwide Mut. Ins. Co.,* 110 AD2d 67, 69; *Matter of Fellner v Country Wide Ins.,* 95 AD2d 106, 108; *Vinson v Berkowitz,* 83 AD2d 531; *see also,* mem of State Exec Dept, 1978 McKinney's Session Laws of NY, at 1748).

2. While defendants did not object to Supreme Court's specific instructions, we find the issue preserved for review on the basis of their precharge exception to any reference to economic loss.

"put the comp[ensation] out of your minds" and simply assess plaintiff's lost earnings. In this manner, the jury was properly directed to calculate lost earnings from which the court could ultimately deduct the sum already received in the form of compensation benefits (Insurance Law § 5102 [b] [2]; *see,* 1 NY PJI2d 383, 385 [1988 Supp]). A review of the judgment confirms that Supreme Court did, in fact, reduce the damage award by offsetting $10,700 in medical expenses and $25,942.30 in lost wages paid by the compensation carrier.[3]

Finally, defendants challenge the verdict as excessive. Plaintiff's damages were separately stated as follows: $200,000 for pain and suffering, $10,700 for medical expenses and $257,000 for loss of earnings.[4] Specifically, defendants maintain that plaintiff's use of charts during summation to project the loss of earnings at $317,000 was improper, for it allowed counsel to "act as an economist" and speculate as to various elements of future loss. As a general rule, the use of charts during summation may be authorized provided the material depicted pertains to matters in evidence *(see, Carroll v Roman Catholic Diocese,* 26 AD2d 552, 553, *affd* 19 NY2d 658; *see also, Hiliuk v Daponte,* 100 AD2d 612). While the summations were not transcribed and the charts utilized were not included in the record on appeal, a review of plaintiff's brief confirms that plaintiff's counsel attempted to project future earnings loss on the assumption that job rehabilitation would cost $10,000 and future earnings would be limited to $10,000 per year. As defendants rightly argue, there is no evidence to substantiate either figure and, in this sense, counsel was improperly allowed to introduce unsworn, speculative evidence to the jury.

We do not, however, find this error so egregious as to warrant a new trial. The basic rule is that loss of earnings must be established with reasonable certainty, focusing, in part, on the plaintiff's earning capacity both before and after the accident *(see, Merrill v Albany Med. Center Hosp.,* 126 AD2d 66, 70 [Kane, J. P., concurring in part and dissenting in

---

3. We glean this information directly from a copy of the judgment included in the record on appeal, without recourse to the posttrial letter written by plaintiff's counsel attached to plaintiff's brief *(see, Gintell v Coleman,* 136 AD2d 515, 517).

4. Since this action was commenced before July 30, 1986 and tried before August 1, 1988, the revised standard for appellate review of monetary awards set forth in CPLR 5501 (c) (as amended by L 1986, ch 682, § 10; L 1988, ch 184, § 20) does not pertain *(see, Marcellus v Nathan Littauer Hosp. Assn.,* 145 AD2d 680; *Merrill v Albany Med. Center Hosp.,* 126 AD2d 66, 71 [Kane, J. P., concurring in part and dissenting in part], *appeal dismissed* 71 NY2d 990).

part], *appeal dismissed* 71 NY2d 990; 36 NY Jur 2d, Damages, § 68, at 118). Recovery is allowed not only for actual lost wages, but for any diminution in future earning capacity *(see,* PJI 2:290; 36 NY Jur 2d, Damages, §§ 68, 69, 198, at 118-121, 334-335). Here, plaintiff was 39 years old at the time of the accident and engaged full time in construction work. She testified to earning $13.84 per hour in the spring of 1985, and that cost of living raises were annually 3% to 4%. Significantly, her orthopedist confirmed that she was permanently disabled from engaging in construction work or any other physically strenuous activity. Plaintiff testified that she had no other employment skills but was willing to engage in job retraining *(cf., Bell v Shopwell, Inc.,* 119 AD2d 715, 716). Moreover, Supreme Court duly informed the jury that at the time of trial, plaintiff had a projected work expectancy of 20.2 years. Given these factors, and the court's admonishment to the jury that arguments presented during summation are not evidence, we find the award of $257,000 in lost earnings is within reason and clearly not shocking to one's conscience *(cf., Ostrowski v Apex Mar. Corp.,* 123 AD2d 257, 259).

We reach a similar conclusion with respect to the other damage components. The medical expenses were not contested. In view of plaintiff's permanent and painful back injury, the pain and suffering award was clearly not so extreme as to warrant this court's interference *(see, Bottone v New York Tel. Co.,* 110 AD2d 922, *lv denied* 65 NY2d 610).

Judgment affirmed, without costs. Mahoney, P. J., Casey, Weiss, Levine and Mercure, JJ., concur.